## The President, Managers, and Company of the Delaware & Hudson Canal Company, Plff. in Err., *v.* Gilbert L. Webster.

It is not negligence *per se* for a passenger to get off a car that is moving slowly, in response to an invitation by a person in charge of the train.

If the train is moving rapidly as to render it clearly dangerous to attempt to get off, the passenger who does get off is negligent.

When there is doubt whether the speed of the train was so rapid as to render it clearly dangerous to get off, the fact is for the jury.

In a suit for damages for injuries sustained by a passenger on a gravity railroad in alighting while the train was moving no faster than a man can walk, past the point at which the conductor had promised to let him off, there was a conflict of testimony as to whether the conductor ordered him to get off or cautioned him against getting off until the train stopped. *Held*, that the fact of the passenger's negligence was for the jury.

The validity of the execution of a commission to take testimony is not affected by the fact that the commissioner signs himself throughout as a notary public merely, except across the seal of the envelope in which he returns the testimony.

(Decided October 4, 1886.)

Error to the Common Pleas of Wayne County to review a judgment on a verdict for the plaintiff in an action of trespass on the case for negligence.    Affirmed.

This was an action by Gilbert L. Webster against the president, managers, and company of the Delaware & Hudson Canal Company, to recover damages for injuries to the plaintiff, alleged to have resulted from the negligence of the defendant's employees.

Cited in Pennsylvania R. Co. v. Lyons, 129 Pa. 113, 120, 15 Am. St. Rep. 701, 18 Atl. 759, holding that the question of contributory negligence is for the jury where a passenger, on not being given sufficient time to leave the train while it was standing, jumped from it after it began to move. See also the following editorial notes: to Carr v. Eel River & E. R. Co. 21 L. R. A. 354, containing a full presentation of the authorities as to liability for injuries to passengers in getting on and off railroad trains; and note to Jagger v. People's Street R. Co. 38 L. R. A. 786, presenting the authorities relating to injuries received in getting on and off moving street cars.

At the trial before COLLUM, P. J., the following facts appeared:

The defendant operated a gravity railroad between Carbondale and Honesdale.   The cars ran on a moderate down grade between the inclined planes, and were controlled by means of brakes; they were light and easily stopped and controlled by the brakes; and the practice was to stop at almost any point where passengers desired to get on or off.

The only intermediate point on the road where a depot was maintained was Waymart; and, while at the time of the accident there were many other places that were understood by the conductors and those who frequented the road as stopping places when there were passengers to get on or off, there was nothing to indicate these stopping places, not even platforms.   The plaintiff was not acquainted with the road, and knew nothing about these stopping places or their location.   On the 17th of December, 1879, he started to go to the house of his son-in-law, who lived on the railroad but a few rods from Keen's sawmill. He knew where his son-in-law lived, but did not know whether Keen's mill was a regular stopping place or not.

He asked the ticket agent at Waymart if he could get a ticket so he could get off at Keen's mill, and was given to understand that he could.   He bought a ticket marked "Keen's."   The conductor understood that he was to get off at Keen's mill, and promised to let him off at that point.   The cars were stopped at George Keen's house, which was not a regular stopping place, about half a mile above Keen's mill, to allow other passengers to get off.   When nearing Keen's mill the conductor applied the brakes, the plaintiff came out on the platform of the car preparatory to getting off; the conductor stood at the brakes and the speed of the train was slackened so it was moving about as fast as a man would ordinarily walk, or, according to the conductor's evidence, perhaps a little slower.

They had passed Keen's mill, and plaintiff was standing on the car step.

As to what then occurred the testimony was contradictory.

The plaintiff testified:

"Mr. Penwarden (the conductor) came out of his car, he was in the head car, and broke up the car because it was running very fast, until we got right opposite the house.   Said he 'Get off.'   I didn't make him no reply.   Right away said he, 'Get

off.' I spoke to him and said: 'I will when you stop your shebang.' We went a short distance farther, and he said, 'I tell you get off.' I got off, and as I got off, I staggered back against the car, and that threw me down. I had a box in my hand, and it tore that pretty bad, and I fell onto my hands and knees."

The conductor testified as follows:

"When he came out on the platform I said: 'Mr. Webster, where are you going here ?' Then we had got fully up to the house, even with it, and a trifle past it, and he said: 'I am going right here.' He had a square box in his hand. It was, perhaps, such a box as milliners keep feathers and such things in. It might have been 2 foot long and it might not. He had that right in both hands, and I saw that he was making an effort as if he wanted to get off. I saw by his motions that he intended to get off. I said: 'Wait until we stop,' but he stepped right off upon the ground. He didn't take hold of the railing of the car. There is a handrail to take hold of, to get on and off, and to protect the platform. He took hold of nothing, but stepped right down."

For the injuries there suffered this suit was brought.

The plaintiff offered the deposition of Dr. Garrison, taken in the state of Florida, on a commission issued to C. Codrington. This was objected to by defendant:

"1. Because the commissioner had made and signed no return to his commission.

"2. Because the paper showed upon the face of it that the answers to the cross-interrogatories were neither written by the commissioner, nor at his office, the ink being entirely different from all that used by the commissioner; but that they were written by some person and brought to the commissioner's office, and signed there by the witness."

The caption stated that the deposition was taken before "C. Codrington, notary public for the state of Florida," and all the jurats were signed in the same way. The envelope was lost, but it was proved that across the seal had been written the words "C. Codrington, Commissioner," and that the envelope was indorsed "Deposited in the postoffice at De Land this 18th day of April, A. D. 1882. C. Codrington, Commissioner."

The paper book of the plaintiff in error did not contain this deposition.

The court overruled the objection to the deposition, and permittted it to be read. First assignment of error.

The defendant asked the court to charge that "even supposing it to be true, as alleged by plaintiff, that Penwarden, the conductor, ordered him to get off the train, no evidence being given of any threats or cause of fear, the plaintiff, in jumping from the train while in motion, at the place and in the manner in which he did, with the box in his hands, and not supporting himself by taking hold of the rail upon the step, was guilty of negligence contributing to his alleged injury, and he cannot recover in this action." *A.* "We refuse this point.    The jury are to ascertain, from all the evidence, whether there was negligence on the part of the plaintiff, contributing to this injury."    Third assignment of error.

And also asked the court to charge that "the plaintiff, having admitted that he jumped off the cars while in motion, was *per se* guilty of negligence, and therefore cannot recover."    Refused. Fourth assignment of error.

The court charged, *inter alia,* as follows:

"When a railroad company undertakes the transportation of a passenger for an agreed price, the contract implies that it is provided with a safe and sufficient railroad to the point indicated; that its cars are stanch and road-worthy; that means have been taken beforehand to guard against every apparent danger that may beset the passenger, and that the servants in charge are tried, sober, and competent men.    When in the performance of this contract a passenger is injured, without fault on his part, the law raises a prima facie presumption of negligence, and throws on the company the onus of showing that it does not exist. This rule, however, does not apply to a case where a passenger receives an injury in alighting from a car, when he has an opportunity of seeing and knowing where he is going, and controlling his movements.    .    .    .

"The implied contract to carry a passenger safely includes the duty of giving him a reasonable opportunity to alight in safety; and it is the duty of a railroad company to cause its cars to come to a full stop for passengers to get off.    But, while it is the duty of a railroad to provide safe and convenient means of ingress and egress to and from the cars, it is equally the duty of the passengers to use the means thus provided with reasonable circumspection and care.    While the company is held to a high degree of care and skill in the transportation of passengers, and is responsible for injuries to them caused by the want of it, the

passengers are required to be careful and prudent, and to conform to the reasonable regulations of the company. If a passenger is injured as a result, in part, of his own want of reasonable care and discretion, he cannot recover, even though it should appear that the negligence of the company contributed to the injury. Where both parties are in fault, and their mutual negligence produces the injury, neither has a right of action for it. This is called contributory, or concurrent, negligence. If, therefore, the negligence of a plaintiff in any degree contributed to the injury for which he sues, he cannot recover. Concurrent negligence is the absence of such a degree of care as the circumstances of the case demand.  .  .  .

"Is the defendant responsible for the acts of the conductor in this action? We think it is. He is in command of the train, and controls its movements. His negligence in letting off a passenger at a point other than a regular station affects the company. We do not mean by this to say that the plaintiff is entitled to recover in this case, or to say that there was any negligence on the part of the conductor, but to affirm that, if there was negligence on his part, and if it alone, without fault of the plaintiff, produced an injury to him, the company is responsible, and must answer for it.

"Now, if the conductor agreed with the plaintiff to stop the train at Keen's mill, and to allow the plaintiff to get off there, it became his duty to the plaintiff to stop the train there, and to afford the plaintiff a reasonable opportunity to get off; and, if the train was not stopped at that place, but its speed was slackened, and the plaintiff came out on the platform of the car and was told by the conductor to get off, and, obeying this direction, was injured without fault of his own, and by reason of an omission or refusal on the part of the conductor to stop the train and afford him a reasonable opportunity to leave the train safely,— then for such injury the plaintiff may recover.

"But if, while the train was in motion, the plaintiff was told by the conductor to get off, and the circumstances were such as would necessarily, or probably, render such an act perilous, the plaintiff cannot recover, because to do the act would be negligence on his part, notwithstanding he was told to do so. And, if it did not appear perilous and unsafe, it was his duty to exercise ordinary care and prudence in complying with the request or direction of the conductor; and, if the want of such care on

his part contributed to the injury, he cannot recover. When the plaintiff got off the cars he had a bundle or box in his hands. He stepped from the car to the ground while the train was moving, without taking hold of the railing of the car or platform, or taking any precautions to steady himself. Was this ordinary care, under the circumstances as developed by the evidence of the plaintiff,—such care as the situation demanded? [This is for the jury, upon all the evidence in the case.]

"We have been requested to say that the evidence of the plaintiff shows contributory negligence on his part, which must defeat a recovery by him in this action. [We cannot say this. We think the jury are to inquire, in this connection, whether the plaintiff exercised ordinary care and prudence in getting off the car, having regard to the situation in which he was placed, and, if he did not, whether the want of it contributed to the injury which he received.]"

Verdict and judgment were for the plaintiff, whereupon the defendant took this writ. The portions of the charge inclosed in brackets were the subject of the second assignment of error.

*W. H. Dimmick* and *H. Wilson,* for plaintiff in error.—To alight from a railroad car when in motion is an act of negligence as obvious and unmistakable as many of the acts which have been judicially pronounced negligence; as, for instance, in Reilly v. Green & C. Streets Pass. R. Co. 4 W. N. C. 273; Philadelphia City Pass. R. Co. v. Hassard, 75 Pa. 377; Gerety v. Philadelphia, W. & B. R. Co. 81 Pa. 274; Carroll v. Pennsylvania R. Co. 12 W. N. C. 348; Empire Transp. Co. v. Wamsutta Oil Ref. & Min. Co. 63 Pa. 14, 3 Am. Rep. 515; Mansfield Coal & Coke Co. v. McEnery, 91 Pa. 185, 36 Am. Rep. 662; Payne v. Reese, 100 Pa. 301; Pennsylvania R. Co. v. Zebe, 33 Pa. 318; Honor v. Albrighton, 93 Pa. 475.

When the standard is fixed, when the measure of duty is defined by the law and is the same under all circumstances, its omission is negligence, and may be so declared by the court. And so, when there is such an obvious disregard of duty and safety as amounts to misconduct, the court may declare it to be negligence as matter of law. West Chester & P. R. Co. v. McElwee, 67 Pa. 315.

What is negligence, and what is ordinary care, must generally be submitted to a jury. This is so if there be any dispute as to

the acts claimed to establish the alleged negligence; but negligence is not to be found without evidence. Gramlich v. Wurst, 86 Pa. 74, 27 Am. Rep. 684.

Negligence is a question for the jury, if there be reasonable doubt as to the facts tending to prove it, or as to the just inferences to be drawn therefrom. McKee v. Bidwell, 74 Pa. 218.

It has never been held that, when the facts of a case have been ascertained, the court may not apply the law to the facts. In questions of negligence it has been repeatedly held that certain facts, when established, amount to negligence *per se.* Hoag v. Lake Shore & M. S. R. Co. 85 Pa. 297, 27 Am. Rep. 653.

The province of the jury is to find facts. If the facts be admitted or ascertained, it is the duty of the court to declare the law thereon. Baker v. Fehr, 97 Pa. 72.

If the undoubted evidence clearly shows any fact which proves that the deceased was guilty of concurring negligence, the court should say there can be no recovery. Pennsylvania R. Co. v. Fortney, 90 Pa. 323.

When the only fact in dispute is an immaterial one, and would not have warranted an inference of negligence, whichever way decided, and the remaining evidence is uncontroverted, and would not warrant an inference of negligence, the court should direct a verdict for defendant. Goshorn v. Smith, 92 Pa. 435.

When the admitted facts clearly show contributory negligence, it is the duty of the court to withhold the question from the jury, and determine it as a matter of law. Germantown Pass. R. Co. v. Walling, 97 Pa. 55, 39 Am. Rep. 796.

The standard of care is shifting where the measure of duty is ordinary care, where the circumstances admit of a wide range of variation, and the degree of care varies with the change of circumstances; the question, in each case, being as to the degree of care which should be exercised under the particular circumstances.

Such is the rule where the question was whether the plaintiff, who used a blind mule in towing on a defective towpath, exercised the degree of care reasonably required under the circumstances. Pennsylvania Canal Co. v. Bentley, 66 Pa. 30.

Where the question was whether a safe-deposit company had provided an adequate guard, under the circumstances. Safe Deposit Co. v. Pollock, 85 Pa. 391, 27 Am. Rep. 660.

Where the question was whether the defendant has exercised a reasonable degree of care to prevent the fall of a platform. Hydraulic Works Co. v. Orr, 83 Pa. 332.

Where the question was whether there was unreasonable delay by the city authorities in removing a nuisance on the street. Fritsch v. Allegheny, 91 Pa. 226.

Where the question was whether a locomotive engineer was guilty of negligence in running over a child of tender years. Pennsylvania R. Co. v. Morgan, 82 Pa. 135.

Where the question was whether the blowing of a locomotive whistle, by which a horse was frightened, was unnecessary, extraordinary, and unreasonable. Philadelphia & R. R. Co. v. Killips, 88 Pa. 405.

The standard is fixed, where the circumstances present too narrow a range of variation to admit of varying degrees of care; where the conditions are substantially the same in all cases, and are such as to make the measure of duty obvious, and the same in all cases.

Such is the rule where a boy left his regular employment at a coal breaker, to carry an oil can to a fellow employee at another point, and stepped into a pair of rollers which had been left uncovered. Honor v. Albrighton, 93 Pa. 475.

Where a passenger, instead of getting out on the platform, alighted on the opposite side, on another track, and was there run over by another train; no necessity for leaving the car on that side being shown. Pennsylvania R. Co. v. Zebe, 33 Pa. 318.

Where the plaintiff, with others, was passing along a pathway, under which was laid a blow pipe from the boilers of defendant's engine, terminating in a wooden box. At the time, the steam was being blown off from the boilers, and escaping through the ground above the box. Seeing this, plaintiff's comrades turned aside to avoid injury; but the plaintiff, instead of turning aside, went on and stepped into the box, whereby he was scalded. Payne v. Reese, 100 Pa. 301.

Where a teamster, knowing the unsafe condition of a bridge, and failing to notify those who were bound to repair it, was killed by its fall. Mansfield Coal & Coke Co. v. McEnery, 91 Pa. 185, 36 Am. Rep. 662.

Where one car in a train was loaded with combustible matter, easily ignited by sparks, and the couplings were so defective that

it could not be detached.    Empire Transp. Co. v. Wamsutta Oil Ref. & Min. Co. 63 Pa. 14, 3 Am. Rep. 515.

It has been declared negligence in a parent to permit a child to trespass on a railroad track.    Cauley v. Pittsburgh, C. & St. L. R. Co. 95 Pa. 398, 40 Am. Rep. 664.

Or to permit a child of tender years to run at large in a city traversed by vehicles and cars.    Glassey v. Hestonville, M. & F. Pass. R. Co. 57 Pa. 172; Pittsburg, A. & M. R. Co. v. Pearson, 72 Pa. 169.

Or to permit a child of tender years to engage in a dangerous employment.    Smith v. Hestonville, M. & F. Pass. R. Co. 92 Pa. 450, 37 Am. Rep. 705.

Or for the driver of a street car to allow a child of tender years to ride on the front platform.    Pittsburg, A. & M. Pass. R. Co. v. Caldwell, 74 Pa. 421.

Or for a locomotive engineer to fail to give warning, and reduce his speed, on approaching a public highway where danger is to be apprehended.    Philadelphia, W. & B. R. Co. v. Stinger, 78 Pa. 219.

It has also been declared negligence to attempt to cross a railroad track immediately in front of an approaching locomotive. Gerety v. Philadelphia, W. & B. R. Co. 81 Pa. 274; Nagle v. Allegheny Valley R. Co. 88 Pa. 35, 32 Am. Rep. 413; Boys v. Pennsylvania R. Co. 2 W. N. C. 198; Anderson v. Pennsylvania R. Co. 4 W. N. C. 274.

To attempt to cross the track without looking for approaching trains.    North Pennsylvania R. Co. v. Heileman, 49 Pa. 60, 88 Am. Dec. 482; Hanover R. Co. v. Coyle, 55 Pa. 396; Pennsylvania R. Co. v. Beale, 73 Pa. 504, 13 Am. Rep. 753; Central R. Co. v. Feller, 84 Pa. 226; Carroll v. Pennsylvania R. Co. 12 W. N. C. 348.

To be on the track, except at a public crossing.    Little Schuylkill Nav. R. & Coal Co. v. Norton, 24 Pa. 465, 64 Am. Dec. 672; Mulherrin v. Delaware, L. & W. R. Co. 81 Pa. 366; Pittsburgh, Ft. W. & C. R. Co. v. Collins, 87 Pa. 405, 30 Am. Rep. 371; Moore v. Pennsylvania R. Co. 99 Pa. 301, 44 Am. Rep. 106; Pennsylvania R. Co. v. White, 88 Pa. 327.

To allow the elbow to project from the car window.    Pittsburg & C. R. Co. v. McClurg, 56 Pa. 294.

To ride on the platform without necessity.    Camden & A. R. Co. v. Hoosey, 99 Pa. 492, 44 Am. Rep. 120.

To attempt to get on or off a train while in motion. · Coller v. Frankford & S. R. Co. 9 W. N. C. 477; Pennsylvania R. Co. v. Aspell, 23 Pa. 147, 62 Am. Dec. 323.

To leap from a ferryboat approaching the landing, when about 3 feet distant. Fish v. Cooper's Point & P. Ferry Co. 4 Phila. 103.

To get off a street car while in motion. Hagan v. Philadelphia & G. Ferry R. Co. 10 W. N. C. 360.

Where the plaintiff, by direction of the conductor, got off a street car by climbing over the guard on the front platform, and while doing so was thrown off by the starting of the car, his act was declared negligence. Reilly v. Green & C. Streets Pass. R. Co. 4 W. N. C. 273.

*George S. Purdy,* for defendant in error.—While the commissioner has added the title of notary public to his signature, it certainly in no way invalidates the deposition. Berks County v. Ross, 3 Binn. 539; Wright v. Waters, 32 Pa. 517.

The commissioner signed his name across the seal of the envelope as "Commissioner." This was a proper execution. Wright v. Wood, 23 Pa. 120; Nussear v. Arnold, 13 Serg. & R. 323.

And it was proper for the witness to write down his own evidence in answer to the interrogatories propounded by the commissioner. Piper v. White, 56 Pa. 90; Crossgrove v. Himmelrich, 54 Pa. 203.

The company cannot repudiate the acts of its agents, the ticket agent and conductor, so as to free itself from responsibility. Lackawanna & B. R. Co. v. Chenewith, 52 Pa. 382, 91 Am. Dec. 168; Western R. Co. v. Young, 51 Ga. 489; Pennsylvania R. Co. v. McCloskey, 23 Pa. 532.

Whether there was negligence in a given case is generally a question for the jury. Hydraulic Works Co. v. Orr, 83 Pa. 332; Lehigh Valley R. Co. v. McKeen, 90 Pa. 122, 35 Am. Rep. 644; North Pennsylvania R. Co. v. Kirk, 90 Pa. 15; Philadelphia & R. R. Co. v. Killips, 88 Pa. 405; Born v. Allegheny & P. Road Co. 12 W. N. C. 283; Jamison v. San José & S. C. R. Co. 55 Cal. 593; Kay v. Pennsylvania R. Co. 65 Pa. 273, 3 Am. Rep. 628; Pennsylvania Canal Co. v. Bentley, 66 Pa. 30.

Where the measure of duty on the part of the passenger is ordinary and reasonable care, and the standard shifts with the

circumstances of the case, the question of contributory negligence is for the jury. Pennsylvania R. Co. v. White, 88 Pa. 329; Germantown Pass. R. Co. v. Walling, 97 Pa. 55, 39 Am. Rep. 796; Philadelphia & R. R. Co. v. Killips, 88 Pa. 407; Pennsylvania R. Co. v. Ogier, 35 Pa. 60, 78 Am. Dec. 322; Pennsylvania R. Co. v. Barnett, 59 Pa. 259, 98 Am. Dec. 346; Johnson v. Bruner, 61 Pa. 58, 100 Am. Dec. 613.

It is not negligence *per se* to stand on the step of the front platform of a street car with the implied assent of the conductor and driver. Germantown Pass. R. Co. v. Walling, 97 Pa. 55, 39 Am. Rep. 796; Wilton v. Middlesex R. Co. 107 Mass. 108, 9 Am. Rep. 11; Sheridan v. Brooklyn City & N. R. Co. 36 N. Y. 39; Meesel v. Lynn & B. R. Co. 8 Allen, 234.

If the motion of the train is so slow that the danger of jumping off is not reasonably apparent, and the passenger acts under the instructions of the conductor, then the defense of contributory negligence is unavailing. And it is for the jury to say whether the danger of leaving or boarding a train when in motion is so apparent as to make it the duty of the passenger to desist from the attempt. Johnson v. West Chester & P. R. Co. 70 Pa. 357; Illinois C. R. Co. v. Able, 59 Ill. 131; Lambeth v. North Carolina R. Co. 66 N. C. 494; Filer v. New York C. R. Co. 49 N. Y. 47, 10 Am. Rep. 327; Delamatyr v. Milwaukee & P. du Ch. R. Co. 24 Wis. 578; Pennsylvania R. Co. v. Kilgore, 32 Pa. 292, 72 Am. Dec. 787.

It has become the settled rule of law in England and in the United States that for a passenger to get off a car that 's moving slowly is not negligence *per se*, but is a question for the jury, under the particular circumstances of the case.

In Robson v. North Eastern R. Co. L. R. 10 Q. B. 271, where a passenger attempted to alight from the steps of a car that extended beyond the platform, the height from the ground being an unusual one,—Held, "that the jury might not improperly have found that the expectation of being carried beyond the B. station was reasonably entertained by the plaintiff, and that the inconvenience would have been such as not to render it imprudent on her part to expose herself to the danger incurred in alighting; and that the defendants were therefore liable for the injury resulting from the plaintiff's act, which had been caused by their negligent breach of duty." On appeal the judgment in favor of the plaintiff was affirmed. L. R. 2 Q. B. Div. 85.

The same rule is applied in Jeffersonville, M. & I. R. Co. v. Hendricks, 41 Ind. 48; Filer v. New York C. R. Co. 49 N. Y. 47, 10 Am. Rep. 327; Mulhado v. Brooklyn City R. Co. 30 N. Y. 370; Morrison v. Erie R. Co. 56 N. Y. 302; McIntyre v. New York C. R. Co. 37 N. Y. 287; Doss v. Missouri, K. & T. R. Co. 59 Mo. 27, 21 Am. Rep. 371; Johnson v. West Chester & P. R. Co. 70 Pa. 357; Pennsylvania R. Co. v. Kilgore, 32 Pa. 292, 72 Am. Dec. 787; Nichols v. Sixth Ave. R. Co. 38 N. Y. 131, 97 Am. Dec. 780; Lambeth v. North Carolina R. Co. 66 N. C. 494; Curtis v. Detroit & M. R. Co. 27 Wis. 158; Toledo, W. & W. R. Co. v. Baddeley, 54 Ill. 20; Cameron v. Milloy, 14 U. C. C. P. 340; Eppendorf v. Brooklyn City & N. R. Co. 51 How. Pr. 475, Affirmed in 69 N. Y. 195, 25 Am. Rep. 171; Day v. Brooklyn City R. Co. 12 Hun, 435; Taber v. Delaware, L. & W. R. Co. 71 N. Y. 489; Sauter v. New York C. & H. R. R. Co. 66 N. Y. 50, 23 Am. Rep. 18; Illinois C. R. Co. v. Able, 59 Ill. 131; Delamatyr v. Milwaukee & P. du Ch. R. Co. 24 Wis. 578.

The rule is doubtless otherwise if the train is moving so rapidly as to render it clearly dangerous to attempt to get off Cram v. Metropolitan R. Co. 112 Mass. 38; Pennsylvania R. Co. v. Aspell, 23 Pa. 147, 62 Am. Dec. 323.

Or when a passenger steps off a moving car when he has reason to believe it will be brought to a full stop, or jumps from a moving car after a reasonable opportunity has been given him to alight while the car was standing.   McClintock v. Pennsylvania R. Co. 42 Phila. Leg. Int. 82.

OPINION BY MR. JUSTICE TRUNKEY:

If the deposition referred to in the first assignment of error was inadmissible for the reasons stated, it is not shown by anything printed in the paper book of the defendant.   From what is printed by the other party it appears there is no fatal defect. And from inspection of the return of the commissioner we find no valid objection.

The remaining question raised by the assignments is: Was it the duty of the court to instruct the jury to render a verdict for the defendant because of the plaintiff's concurrent negligence? That it was fairly submitted to the jury, if it was proper to submit at all, to find whether the plaintiff was negligent, with instruction that, if his negligence contributed to the accident, he cannot recover, is conceded.

Had the jury found that the whole of the conductor's testimony was true, the plaintiff had no case, and so the court charged. The statements as to what the conductor said just before the plaintiff stepped off the car are in sharp conflict. One testifies that the conductor told the plaintiff three times to get off; the conductor, that he said to the plaintiff: "Wait till we stop." It is uncontroverted that the plaintiff was to get off at Keen's mill; that the train was not running as fast as a person would ordinarily walk; that it was under control and could have been stopped within the length of a car.

The principles applicable to the question presented are well settled. It is not negligence *per se* for a passenger to get off a car that is moving slowly, in response to invitation by a person in charge of the train. But if the train is moving so rapidly as to render it clearly dangerous to attempt to get off, the passenger who does is negligent. When there is doubt whether the speed of the train was so rapid as to render it clearly dangerous to get off, the fact is for the jury.

"Although, if a passenger, without any directions from the conductor, voluntarily incurs danger by jumping off the train while in motion, the carrier is not responsible for injury resulting therefrom; yet if the motion of the train is so slow that the danger of jumping off is not reasonably apparent, and the passenger acts under the instructions of the conductor, then the defense of contributory negligence is unavailing, and it is for the jury to say whether the danger of leaving or boarding a train when in motion is so apparent as to make it the duty of the passenger to desist from the attempt." Wharton, Neg. § 380.

This doctrine is sustained by numerous decisions in other states, and is not in conflict with the authorities in this state.

When a person, about to jump from a car running 10 miles an hour, in midnight darkness, is warned by the conductor of the danger, and told that the train shall be stopped, takes the risk, jumps, and is hurt, his concurrent negligence bars recovery. In that case the court rules that an action cannot be maintained. Pennsylvania R. Co. v. Aspell, 23 Pa. 147, 62 Am. Dec. 323.

In McClintock v. Pennsylvania R. Co. 42 Phila. Leg. Int. 82, the plaintiff got off a moving train without direction or notice of any person in charge of the train. There was some conflict of testimony respecting the circumstances, and the question was submitted to the jury.

When a woman, accompanied by three children, on arriving at her place of destination proceeded to alight, two of the children had left the car, and, while she was still on the car, the train started, when she sprang upon the platform and was injured. The question of concurrent negligence is to be determined by the particular circumstances, and is for the jury. Her case was not like Aspell's. The abstract truth, "that it is wrong for a party to attempt to leave the cars while they are in motion," did not apply to the circumstances in which she was placed. Pennsylvania R. Co. v. Kilgore, 32 Pa. 292, 72 Am. Dec. 787.

In Johnson v. West Chester & P. R. Co. 7 0Pa. 357, the question was whether the plaintiff, who had attempted to board a train while in motion, was guilty of contributory negligence. The court charged that, if the train was distinctly running upon the track when the plaintiff attempted to enter, he was guilty of negligence and could not recover. That was held to be error; and this court ruled that it was for the jury to say, under all the circumstances in evidence, whether the danger of boarding the train when in motion was so apparent that the plaintiff was guilty of contributory negligence in making the attempt.

There was no error in submitting the question to the jury.

Judgment affirmed.